IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1997 SESSION

FILED

November 4, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. No. 01C01-9608-CR-00349 |
| | * | |
| Appellee, | * | DAVIDSON COUNTY |
| | * | |
| VS. | * | Hon. Seth W. Norman, Judge |
| | * | |
| STEVEN E. BAKER, | * | (Sexual Battery; Especially Aggravated |
| | * | Sexual Exploitation of a Minor) |
| Appellant. | * | |

For Appellant:                         For Appellee:

Richard McGee                          Charles W. Burson
601 Woodland Street                    Attorney General and Reporter
Nashville, TN 37206
                                       Peter M. Coughlan
                                       Assistant General and Reporter
                                       450 James Robertson Parkway
                                       Nashville, TN 37243-0493

                                       Lila Statom
                                       Assistant District Attorney General
                                       Washington Square
                                       Suite 500
                                       222 Second Avenue, North
                                       Nashville, TN 37201-1649

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Steven Eugene Baker, pled guilty to one count of especially aggravated sexual exploitation of a minor and two counts of sexual battery. The trial court imposed concurrent, Range I sentences of nine years and one year, respectively. In this appeal of right, the defendant challenges the length of the sentence and the trial court's denial of alternative sentencing.

We affirm the judgment of the trial court.

On the night before Thanksgiving in 1994, the defendant, a step-grandfather to the fourteen-year-old female victim,[1] provided her with medication for a headache. Afterward, while the victim was asleep in her grandmother's living room, the defendant videotaped himself touching the victim on her breast and digitally penetrating her vagina. The victim never awoke and had no recollection of the occurrence.

Just prior to the Christmas holidays in the same year, the defendant looked at the videotape in anticipation of a visit by the victim. Because he neglected to remove the tape from his VCR, the victim's father learned of its content on the next day. There were a number of pornographic videotapes and magazines found in the defendant's bedroom.

The defendant was charged with rape, sexual battery, and especially aggravated sexual exploitation of a minor. In accordance with a plea agreement,

---

[1] It is the policy of this court to withhold the identity of children involved in sexual abuse. State v. Schimpf, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

2

the state dropped the rape charge and the defendant pled guilty to the remaining charges.

At the sentencing hearing, the victim testified that she and the defendant had enjoyed a close friendship. She related that when she was younger, she had often confided in the defendant and viewed him as somewhat of a father figure. By the time she was eleven, however, the defendant began to verbally abuse her. She claimed that the defendant "gave [her] guilt trips" and pleaded to have sex with him so as to "help" his marriage to her grandmother. As time passed, the incidents became more frequent and offensive to the victim. She testified that she was afraid to sleep at night and experienced nightmares. Because her grandmother refused to leave the defendant after the sexual assault, the victim described her relationship with her grandmother as uncomfortable. The victim testified that she coped with her knowledge of the incident with counseling and involvement in school and church activities.

The victim's father and mother, Carl and Victoria Shackleford, testified that relationships among the entire family had deteriorated. Family members had taken sides in the matter and felt stigmatized by the incident.

The defense proof included testimony by the defendant, his wife, and his counselor, psychological evaluations, and eleven letters from friends and co-workers showing support for and confidence in the defendant. Nancy Baker, the defendant's wife and the victim's grandmother, was fully supportive of her husband. She believed that the defendant had adequately acknowledged responsibility for his actions by expressing remorse, cooperating with the police, surrendering himself into custody, and seeking counseling.

3

The forty-three-year-old defendant has no prior record and no history of violent behavior. He has a bachelors degree in engineering and has worked fairly steadily as an engineer and real estate agent. He has consistently paid child support payments to his two children from a prior marriage. The defendant testified that he had benefitted by intensive counseling: "I know that I've created a great deal of pain for a lot of people that I love. ... My actions have separated their family." He expressed remorse for his actions and accepted full responsibility for the incident. The defendant claimed that he had tried to cooperate fully during the police investigation and had agreed to the state's request for an evaluation at the Luton Mental Health Center of Nashville.

When asked if he had been guilty of improperly touching the victim prior to November of 1994, the defendant initially said no. He then explained that he had inadvertently touched, then continued to fondle, the victim's breast while she slept on a single prior occasion. When asked if he had drugged the victim in November of 1994, he maintained that he had given the victim nothing stronger than Excedrin P.M. On further cross examination, the defendant admitted that he was not receiving sex-offender specific treatment, as recommended by Luton Mental Health Center.

Dr. Scott Ericson, a Christian counselor, had conducted weekly sessions with the defendant for about a year following the charges. Dr. Ericson reported that the defendant had worked diligently to face up to the issue and that he did not believe that the defendant would reoffend. In contrast, the Luton Mental Health Center described the defendant at "moderately high risk for future sexual exploitation of other persons" and characterized the defendant's prognosis as fair

with treatment and poor without treatment; there were specialized recommendations:

> It is recommended that Mr. Baker receive sex offender-specific mental health treatment for his compulsive and addictive sexual behaviors, anxieties, and offenses. Treatment should include both individual and group therapy services that are sex-offender specific in format and conducted by a therapist(s) competent in the areas of sexual offender and sexual addiction issues. At this time, it appears that Mr. Baker is not in need of a secure-type facility and that treatment may be pursued at an outpatient, community-based facility which offers a specialized treatment program for sexual offenders and persons with significant sexual addiction issues.
>
> \*\*\*
>
> Due to his present level of insight and rationalization of his sexual offense against an adolescent female minor, it is recommended at this time that Mr. Baker have no contact with female children under 18 years old unless they are under responsible adult supervision.
>
> \*\*\*
>
> Mr. Baker should be accountable...for his daily whereabouts.
>
> \*\*\*
>
> Mr. Baker should not purchase or use pornographic materials or frequent establishments where such materials are displayed.
>
> \*\*\*
>
> Mr. Baker should attend at least weekly a community-based self-help group for persons with sexual compulsions.

Detective Steve Cleek, who questioned the defendant, testified that the defendant acknowledged his sexual attraction to the victim. Detective Cleek recalled that the defendant admitted to fondling the victim's breast on a prior occasion while hugging her on the front porch. At the sentencing hearing, the defendant denied that the incident ever occurred.

While imposing sentence, the trial judge stated a belief that the abuse had been ongoing since the victim was eleven. The trial court specifically found that the medication given in November of 1994 had an incapacitating effect on the victim

5

and that the crimes had been committed for purposes of gratification. Thus, two

enhancement factors were deemed applicable:

> (4) A victim of the offense was particularly vulnerable
> because of age or physical or mental disability ...;
>
> ***
>
> (7) The offense involved a victim and was committed to
> gratify the defendant's desire for pleasure or
> excitement[.]

Tenn. Code Ann. §§ 40-35-114 (4), (7) (Supp. 1995). The trial court heard but

rejected claims of mitigating factors. While rejecting the notion of consecutive

sentencing, the trial court denied the defendant's request for alternative sentencing.


The defendant first contends that the trial court erred by failing to apply

nonstatutory mitigating circumstances to reduce his sentence to eight years. He

also argues that the trial court should have allowed him to serve his sentence

through Community Corrections or strict probation.


When there is a challenge to the length, range, or manner of service of

a sentence, it is the duty of this court to conduct a de novo review with a

presumption that the determinations made by the trial court are correct. Tenn. Code

Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing

in the record that the trial court considered the sentencing principles and all relevant

facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see

State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission

Comments provide that the burden is on the defendant to show the impropriety of

the sentence.


Our review requires an analysis of (1) the evidence, if any, received at

the trial and sentencing hearing; (2) the presentence report; (3) the principles of

sentencing and the arguments of counsel relative to sentencing alternatives; (4) the

nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the time of this offense, the presumptive sentence was the minimum in the range if there were no enhancement and mitigating factors. Tenn. Code Ann. §§ 40-35-210. Should the trial court find mitigating and enhancement factors, it must start at the minimum sentence in the range and enhance the sentence based upon any applicable enhancement factors, and then reduce the sentence based upon any appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Criminal Sentencing Reform Act of 1989. See Ashby, 823 S.W.2d at 169. The trial court should, however, make specific findings on the record which indicate its application of the sentencing principles. Tenn. Code Ann. §§ 40-35-209 and -210.

The defendant does not challenge application of the two enhancement factors. He does argue that the trial court was required to reduce his sentence based on the following nonstatutory mitigating factors:

> 1. The defendant has no prior criminal history of any kind either as a juvenile or an adult.
>
> 2. The defendant immediately sought intensive psychological counseling for the mental illness which was the predicate for the commission of the offense in this case.
>
> 3. The defendant is clearly remorseful for the harm that he caused to the victim and both her family and his family.
>
> 4. The defendant cooperated with police officers by giving a confession even though he was instructed by the

7

officers that any statements that he would make would be used against him.

5. The defendant cooperated with the District Attorney's Office by voluntarily participating in the evaluation at the Luton Mental Health Center at his own expense when he was under no legal obligation to do so.

6. The defendant has significant family and community support.

7. The defendant's prior employment history is excellent.

In our view, the defendant is entitled to some mitigation by virtue of each of these circumstances. Each factor serves the defendant in a favorable manner. Yet two enhancement factors specifically apply. Moreover, the defendant was in a position to commit the crime because of his familial relationship with the victim. The crimes, in our view, qualify as breaches of a private trust. Tenn. Code Ann. § 40-35-114(15). Neither enhancement nor mitigating factors have any particular weight. This court fully approves of the nine-year sentence, only one year above the minimum. Any entitlement to mitigation would be offset by the additional enhancement factor.

Further, we cannot say that the trial judge erred in denying alternative sentencing. The defendant argues that he is capable of rehabilitation, requires treatment for the mental illness that prompted this offense, and would have a much greater probability of recovery under an alternative sentencing scheme. He also argues for imposition of a one-year incarceration period followed by especially restricted probation. The state contends that continuous confinement is required due to the seriousness of this offense and that there is a "moderately high risk" that the defendant will reoffend.

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative

8

sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b). Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285 (Tenn.1978).

Here, because we have upheld the nine-year sentence, the defendant simply does not qualify for probation. See Tenn. Code Ann. § 40-35-303(a). Moreover, had he qualified, this court would have affirmed the denial. The nature and circumstances of the offenses may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158 (Tenn. 1983). Here, the record demonstrates an obvious reluctance on the part of the defendant to acknowledge a prior incident of improper conduct involving this victim.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn.1990). Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a

9

matter of law or right.  State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App.1987).

The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses;  and
>
> (7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a) (emphasis added).  Subpart (a)(2) above would

initially exclude the defendant because sexual battery is classified as an "offense

against the person." See Tenn. Code Ann. § 39-13-505; see State v. Boston, 938

S.W.2d 435, 438 n.5 (Tenn. Crim. App. 1996).   However, subpart (c) creates a

"special needs" category of eligibility:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of a chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c) (emphasis added).  Thus, the defendant would

arguably be eligible for Community Corrections under this "special needs" category.

However, to be eligible for Community Corrections under subpart(c), the defendant

must first be eligible for probation under Tenn. Code Ann. § 40-35-303. State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989).

Moreover, in Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these. 823 S.W.2d at 171. See State v. Moss, 727 S.W.2d 229, 235 (Tenn.1986). "[E]ach case must be bottomed upon its own facts." Taylor, 744 S.W.2d at 922. "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers." Ashby, 823 S.W.2d at 171. Here, the trial judge considered and rejected Community Corrections, "[a]s a result of his sentence under [Tenn. Code Ann.] § 40-35-303, I do not feel that the defendant is eligible for any type of alternative sentencing. ... That's the judgment of the Court."

The defendant, while otherwise described as a candidate for out-patient treatment, was diagnosed as a "moderately high risk for future sexual exploitation" by the Luton Mental Health Center. While the defendant was apparently willing to undergo sex-offender specific treatment, as opposed to that provided by Dr. Ericson, he had not done so during the period of time between the offenses and the sentencing hearing.

Thus, the trial judge, who observed the witnesses first-hand, had an additional basis for rejecting a Community Corrections sentence. Recognizing that, this court must defer to the determination made by the trial court.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
David H. Welles, Judge


_____
Curwood Witt, Judge